Sam D. SCHMIDT, Plaintiff–Appellant,

v.

CERTAIN UNDERWRITERS AT LLOYD'S OF LONDON, Subscribing to Certificate Number M980076D021, Under Contract Number 392–M980076, Defendant–third–party–plaintiff–Appellee,

v.

John Gorsline; The Gorsline Insurance Company, Inc., Third–party–defendants–Appellees.

No. 04–17034.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 19, 2006.

Filed Nov. 3, 2006.

Douglas K. Devries, Esq., Devries Law Firm, Sacramento, CA, Steven J. Parsons, Esq., Law Offices of Steven J. Parsons, Las Vegas, NV, for Plaintiff–Appellant.

Stephen Marcellino, Esq., Wilson, Elser, Moskowitz, Edelman & Dicker, New York, NY, Lance A. Maningo, Esq., Law Offices of Bellon & Maningo, Las Vegas, NV, Steven Young, Esq., Wilson Elsner Moskowitz et al, White Plains, NY, William S. Roberts, Esq., Wilson Elser Moskowitz Edelman & Dicker LLP, San Diego, CA, for Defendant–third–party–plaintiff–Appellee.

Janice Hodge Jensen, Esq., Laxalt & Nomura, Reno, NV, for Third–party–defendants–Appellees.

Before: REINHARDT, RYMER, and THOMAS, Circuit Judges.

## MEMORANDUM *

Sam D. Schmidt appeals the district court's decision granting summary judgment in favor of certain underwriters at Lloyds of London ("the Underwriters") as to insurance coverage. We reverse and remand. Because the parties are familiar with the factual and procedural history of this case, we will not recount it here.

## I

We review the district court's grant of summary judgment *de novo. Funky Films, Inc. v. Time Warner Entertainment Co., L.P.*, 462 F.3d 1072, 1076 (9th Cir.2006). In reviewing the district court's grant of summary judgment, "[w]e must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law." *Fitzgerald Living Trust v. United States*, 460 F.3d 1259, 1263 (9th Cir.2006). Summary judgment is only appropriate if "the evidence ... is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

█ Applying these principles, we conclude that genuine issues of material fact exist that preclude summary judgment in this case. Construing the facts in the light most favorable to Schmidt, as we must at this stage, broker Gorsline tendered an offer to renew the insurance contract stating that the "quote is valid for 30 days."[1]

Schmidt responded in a handwritten fax stating "Sorry John ... I don't have a contract to drive yet unfortunately! I'll call you.—Sam." The district court concluded that this handwritten response "can only be interpreted as a declination of the proposed coverage."

Schmidt contends that the fax merely indicated his desire to wait before acting, which he eventually did. Schmidt's interpretation of the fax is not only supported by the plain text and his own testimony, but by the deposition testimony of broker Gorsline who stated that he had several conversations with Schmidt in which Schmidt indicated he was not sure what he wanted to do regarding the policy. The prior course of dealing between the parties indicated that payment of the premium within the offer period was sufficient to renew the policy, even if it was not accompanied by the Renewal Proposal Form. Additionally, once payment was received by Gorsline, a letter sent by Gorsline to the Underwriters and copied to the Schmidt family indicated that Gorsline did not feel the Renewal Form was necessary to bind coverage. To the extent returning the Renewal Form was ever an express requirement of acceptance—and we think the course of dealing establishes that it was not—this letter waived that requirement. Given the record, and construing the facts in the light most favorable to Schmidt, there exists a genuine issue of material fact precluding summary judgment as to whether his fax constituted a rejection of the offer, and whether his subsequent acceptance of the offer was effective.

We decline to reach any other defenses urged on appeal.[2]

---

\* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36–3.

1. The Underwriters allege that Gorsline did not have authority to make such an offer, but

that is another question of fact that cannot be resolved on summary judgment.

2. Specifically, Gorsline also urges on appeal that the "known loss" doctrine precludes recovery—a theory not decided by the district court. Gorsline concedes there is no Nevada

## II

■ The district court also erred by refusing to consider Schmidt's Nevada law claims. The liberal pleading rules codified by Fed.R.Civ.P. 8 have been interpreted to allow as sufficient, in an insurance context, merely claiming that injuries or expenses are covered under the terms of a policy and "demand[ing] the coverage called for in the policy." *Crull v. GEM Ins. Co.*, 58 F.3d 1386, 1391 (9th Cir.1995). "The pleadings need not identify any particular legal theory under which recovery is sought." *Id.* Accordingly, Schmidt was not required to raise his Nevada state law claims any earlier than he did and the district court was obliged to consider them. Because the district court did not address Schmidt's state law theories on the merits, we decline to reach the merits of those claims for the first time on appeal.[3]

**REVERSED AND REMANDED.**

RYMER, Circuit Judge, dissenting.

I disagree that there is a genuine issue of material fact that precludes summary judgment in this case. Trial will be to the court. "[W]here the ultimate fact in dispute is destined for decision by the court rather than by a jury, there is no reason why the court and the parties should go through the motions of a trial if the court will eventually end up deciding on the same record." *TransWorld Airlines, Inc. v. American Coupon Exchange, Inc.*, 913 F.2d 676, 684 (9th Cir.1990). Here, the historical facts are undisputed, and there are no credibility issues. Even if there are conflicting inferences that could reasonably be drawn from these facts, the judge may resolve them now because he, not a jury, is the finder of fact.

Schmidt's main argument is that the district court erred by failing to consider any theory of liability based on alleged violations of Nevada insurance statutes. Even if these theories were timely raised, however, the Nevada statutes upon which Schmidt relies are immaterial if Schmidt failed to accept Underwriters' renewal offer by January 5, 2000. This is because, as the district court held, his 1999 policy terminated on that date.

Schmidt's policy covered injuries or disablement resulting from racing activities for twelve months starting January 5, 1999. As January 5, 2000 approached, Schmidt was actually receiving benefits for temporary disability due to injuries suffered in an accident that occurred in October 1999, and was not racing. Although Schmidt has no memory of communicating with John Gorsline in December, Gorsline

---

case law adopting this theory and offers only minimal authority—from another jurisdiction's intermediate appellate court in 1948—that applies the doctrine to circumstances in which a loss occurred after a policy was in effect but during the period in which renewal was pending. Regardless, we decline to address this issue for the first time on appeal, leaving that to the district court to consider in the first instance.

**3.** We disagree with the dissent's position that there is no possibility of relief under the Nevada state law claims. For example, Schmidt has asserted a very colorable claim that the notice provisions of Nevada's general insurance statutes apply to Schmidt's policy. If applicable, notice was required to be given thirty days in advance for renewals offered at different rates. *See* Nev.Rev.Stat. § 687B.350 (1999). The earliest notice of renewal Schmidt purportedly received was on December 14, 1999—twenty-two days prior to expiration of the policy. That communication contained no reference to any rate increase. He was not given notice that renewal would be offered at a higher rate ($17,800 as opposed to $14,000, a 27% increase) until January 3, 2000—two days before expiration. Whether § 687B.350 or any other statutory provision applies, whether any provision was violated, and what the remedy is for such violations, are all questions we leave to the district court to answer in the first instance.

submitted evidence that he sent (and that Schmidt's fax received) a fax on December 14 reminding Schmidt that his insurance was to expire on January 5, 2000, and that he had to complete and return the "following" motorsport proposal form "[i]n order to start the renewal process." The form that followed was captioned "Motorsports Renewal Proposal Form." Gorsline also stated that he had several telephone conversations with Schmidt in mid-December about the need to renew, but that Schmidt never expressed an intent to renew. On January 3, 2000 Gorsline faxed Schmidt again, advising: "Your personal accident insurance plan expires on January 5th." Gorsline's letter attached a renewal quote and indicated that renewal would be at a higher premium based on the claim in 1999. The fax stated: "We can put this in force as soon as you approve it, we just need the renewal proposal form completed and returned to us. Based on the time frame, please advise us as soon as possible as to your plans." There were three attachments: a "Motorsports Renewal Proposal Form," a "Personal Accident Insurance Quote," and a bill for $17,800 for insurance from January 5, 2000–January 5, 2001. The renewal quote reflects a twelve month period starting January 5, 2000; coverage for disability and medical expenses arising out of Schmidt's occupation as a race car driver; and a premium of $17,800. It also notes that "Underwriters reserve the right to alter this quote prior to issuance of the policy. This quote is valid for 30 days." Schmidt responded the same day with a handwritten note on the bill, stating "Sorry John … I don't have a contract to drive yet unfortunately! I'll call you.—Sam." Regrettably, given what happened, this note did not accept the offer of renewal, and Schmidt's coverage expired on January 5. At most, Schmidt's note countered that he would approve renewal when he did get a contract to drive and would advise Gorsline accordingly.

But, critically, he did not approve renewal then, or return the form, as required by the offer to put renewal insurance in force. Schmidt does not contend, and submitted no evidence, that his handwritten response does not mean what it plainly says. And, of course, uncommunicated, subjective intent cannot raise a genuine issue for trial.

Nor did tendering the premium after his accident have the legal effect of accepting the proposal. Prior to this, Schmidt had not let Gorsline know that he had a contract to drive, or that he wanted to trigger renewal coverage. Likewise, he had not returned the "Motorsports Renewal Proposal Form." Construing the quote in Schmidt's favor as both locking in the premium and giving him 30 days to respond, and interpreting the premium check as indicating approval of the renewal offer, still he never returned the Motorsports Renewal Proposal Form. Thus, even after the accident he did not take the steps necessary to accept the offer to put renewal coverage in force. Accordingly, having declined renewal coverage before the policy terminated, Schmidt could not retroactively accept it after his accident.

The prior course of dealing between Schmidt and Gorsline does not suggest otherwise for, even though the premium paid when due by Treadway was renegotiated to a lower amount that Schmidt remitted in April 1999, Schmidt had approved the insurance plan and returned the "Motorsports Proposal Form" to Gorsline *before* coverage was bound.

The result is no different under the Nevada statutes upon which Schmidt relies. A grace period extends the time to pay installments of the premium but has no bearing on the termination date when a policy expires. Similarly, cancellation obligations have no bearing on policies that aren't cancelled, or on policies that expire by their own terms within a year. Renewal obligations apply to similarly situated

persons, and there is no suggestion that Underwriters did not treat other race car drivers similarly. Finally, a statutory right to renew is immaterial given that Underwriters in fact offered to renew; Schmidt does not lack coverage because of any failure on Underwriters' part to make renewal available, but because he failed to accept the offer before his policy terminated. This means that, as of January 6, he had no insurance. Given this view, there is no need for me to reach Underwriters' argument that it is a surplus lines broker not subject to Arizona insurance law. However, given the majority's disposition, the district court may need to resolve or certify this unsettled issue.

As I believe the district court got it right, and was entitled to do so on summary judgment, I would affirm.